IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YUKIE SOTO-ELLIOTT,<br><br>    Plaintiff,<br><br>  vs.<br><br>STATE OF NEBRASKA, in official capacity; COUNTY ATTORENY OFFICE, in official capacity;  CITY OF BELLEVUE, in official capacity;  BELLEVUE POLICE DEPARTMENT, in official capacity; PAPILLION POLICE DEPARTMENT, in official capacity;  SARPY COUNTY JAIL, in official capacity; AIMEE C. BATAILLON, in official capacity; J. HAGGIS, Bellevue Officer, in official capacity; D. BAFARO, Officer, in official capacity; HOWARD BANKS, LT, in official capacity;  MCDANIEL, Sargent, in official capacity;  AUTO BODY AUTHORITY TOWING AND IMPOUND INC, in official capacity; and  HONDA CARS OF BELLEVUE DEALERSHIP,<br><br>    Defendants. | 8:24CV290<br><br>MEMORANDUM AND ORDER |

  Plaintiff Yukie Soto-Elliott ("Plaintiff") filed a Complaint, (Filing No. 1), on July 22, 2024, and has been given leave to proceed in forma pauperis, (Filing No. 7). The Court is required to conduct an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). Before conducting this review, the Court will address the multiple motions Plaintiff has filed to amend her Complaint.

### I. MOTIONS TO AMEND COMPLAINT

  Plaintiff filed her 144-page Complaint on July 22, 2024, naming the following parties as defendants: State of Nebraska, County Attorney Office, City of Bellevue, Bellevue Police Department ("BPD"), Papillion Police Department ("PPD"), Sarpy County Jail, Bellevue City Attorney Aimee C. Bataillon ("Bataillon"), BPD Officer J. Haggis ("Officer Haggis"), BPD Officer D. Bafaro ("Officer Bafaro"), BPD Lieutenant Howard Banks ("Lt. Banks"), BPD Sergeant McDaniel ("Sgt. McDaniel"), Auto Body Authority Towing and Impound Inc. ("Auto

Body Authority Towing"), and Honda Cars of Bellevue Dealership ("Bellevue Honda"). On September 3, 2024, Plaintiff filed a motion to amend her Complaint ("First Motion to Amend"), identifying the only amendment as being to "Section 3," her request for relief, and including what appear to be requests for a "subpoena for production of documents from all defendants," "to overrule dismissal or transfer to federal jurisdiction," for "arrest warrants," and "to submit USB drive" as an exhibit. (Filing No. 8 at CM/ECF p.1.) Plaintiff attached a signed copy of her proposed amended complaint consisting of 152 pages, the majority of which mirrored her original Complaint but included different attachments. (*Compare* Filing No. 1 *with* Filing No. 8.)

Subsequently, on January 7, 2025, Plaintiff filed a second motion to amend her Complaint ("Second Motion to Amend"), asking to amend her pleading to dismiss defendants County Attorney Office, City of Bellevue, BPD, PPD, Sarpy County Jail, Bataillon, Lt. Banks, Sgt. McDaniel, and Bellevue Honda. (Filing No. 10 at CM/ECF pp. 1–7.) Plaintiff also attached a signed copy of her proposed amended complaint (hereinafter "Amended Complaint"), alleging claims against the remaining four defendants State of Nebraska, Auto Body Authority Towing, Officer Bafaro, and Officer Haggis. (Filing No. 10 at CM/ECF pp. 7–390). Plaintiff indicated her Second Motion to Amend "is the final [motion to] amend and [Plaintiff] is satisfied with [the] amend[ment]."  (Filing No. 10 at CM/ECF p. 1.)

Plaintiff clearly intended her proposed Amended Complaint to supersede both her original Complaint and her First Motion to Amend. Accordingly, upon consideration, the Court will grant Plaintiff's Second Motion to Amend, (Filing No. 10), will consider the Amended Complaint as the operative pleading, *see* NECivR 15.1(b), and will deny Plaintiff's First Motion to Amend, (Filing No. 8), as moot. In the interests of justice, the Court will forgo the requirement in NECivR 15.1(c) that Plaintiff file the Amended Complaint after the granting of her motion to amend and will direct the Clerk of Court to update the docket text of Filing No. 10 to reflect that it is the Amended Complaint. *See* NEGenR 1.1(c) ("[I]n the interests of justice a judge may deviate from this court's rules or procedures.").

The Court now conducts an initial review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). For purposes of this initial review, the Court has considered the contents of the flash drive attachment Plaintiff filed with her original Complaint. (Attachment A1 to Filing No. 1.)

2

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff sues the State of Nebraska, Auto Body Authority Towing, Officer Bafaro, and Officer Haggis (collectively "Defendants") all in their official capacities. Plaintiff alleges Defendants violated the Americans with Disabilities Act ("ADA"), as well as her

> constitutional rights, HIPPA LAWS, Police misconduct, police brutality, human rights, civil rights, city laws, state laws, federal laws, Indonesia laws, terroristic attack homeland security, hate crime, slander, false arrest, illegal towing, personal property damage, personal injury damaged, government corruption, co-conspiracy, ADA police vs deaf and hard of hearing laws, intimidations, retaliation, discrimination, assault on disabled person, adult disabled abuse, ethic code, interpret laws and protection, police perjury of a police report, biased arrest, racial profiled, targeted, defamations charter, allowed hit and run, allowed someone to pull gun, allowed leaving the of wreck, allowed failure to prove information after wreck, illegal towing, [and] abuse of power.

(Filing No. 10 at CM/ECF p. 8 (as in original).)[1]

Plaintiff's Amended Complaint consists of over 380 pages including approximately 26 often-lengthy numbered paragraphs interspersed with recitations of various legal or other authorities and supplemental exhibits including over 280 pages of medical records. The facts underlying Plaintiff's claims are difficult to discern within the prolix Amended Complaint. Plaintiff describes herself as a deaf/hard-of-hearing, Native American, transgender woman who owns and operates a non-profit organization called R-Elliott Company Critic Worldwide News Community Emergency Response Team, Inc. (Filing No. 10 at CM/ECF pp. 22, 29.) As the Court understands it, on April 30, 2024, in Bellevue, Nebraska, Plaintiff was involved in an incident where another driver almost ran her off the road and, when Plaintiff tried to obtain the other driver's information, the other driver pulled a gun on Plaintiff. The other driver then drove off and falsely reported to law enforcement that Plaintiff was at fault. Officer Haggis and Officer Bafaro then encountered Plaintiff at a Tire Plus store where Plaintiff was parked in her "2011 Kia Sorento ex storm chaser ambulance CERT [Community Emergency Response Team] company car." (Filing No. 10 at CM/ECF p. 27.) Plaintiff alleges she told the officers that she refused to speak to them without a supervisor because she previously filed a formal complaint against Officer Haggis related to a January 28, 2024, traffic stop where Officer Haggis cited Plaintiff for an improper turn. Plaintiff claims Officer Haggis then ripped her vehicle's door open and "in 10 seconds" "forced

---

[1] Unless otherwise indicated, citations to the Amended Complaint will be corrected for spelling, capitalization, and punctuation.

dragged [her] out of her car" and "tossed her to the ground ripping the stitches on her left breast" from Plaintiff's recent breast implant surgery. (Filing No. 10 at CM/ECF p. 27.) The audio from one of the videos submitted by Plaintiff indicates one of the officers, presumably Officer Haggis, asked for Plaintiff's license and registration and then directed Plaintiff to step out of the vehicle after she asked for a supervisor, to which Plaintiff responded "hold on a second," immediately followed by loud commands from the officers to not reach or "don't be reaching" and sounds indicating Plaintiff was being removed from the vehicle.[2] (Attachment A1 to Filing No. 1.) The officers handcuffed Plaintiff and called for a supervisor, but denied her request for an interpreter saying, "Interpret[er] for what? You're talking just fine; you don't need one, you're talking just fine." (Filing No. 10 at CM/ECF p. 20.)

Plaintiff further alleges Officer Bafaro "will[fully] touch[ed] her sexual[ly] with his hands over her breast without a female officer and touch[ed] her between the legs and butt by illegal[ly] searching . . . and place[d] [her] with her cellphone in the back of a squad unit." (Filing No. 10 at CM/ECF p. 34.) Plaintiff claims Officer Haggis and Officer Bafaro falsely arrested her for "resisting arrest, obstruction of public servant, impersonation [of] public servant, [and] careless driving," (Filing No. 10 at CM/ECF p. 21), and transported her to the Sarpy County Jail. Officer Bafaro "took the plaintiff's hearing aids at the county jail and lied . . . to the Sarpy County jailers that the hearing aids were Bluetooth headsets," (Filing No. 10 at CM/ECF p. 34). Plaintiff bailed out of jail.

When Plaintiff was arrested, she alleges Auto Body Authority Towing illegally towed her vehicle from where it was properly parked in a handicap spot pursuant to, presumably, Officer Haggis' and Officer Bafaro's direction, even though Plaintiff had a power of attorney in place to permit her boyfriend to "take full ownership and hand over the car to the mother Rebecca Cleveland to keep safe." (Filing No. 10 at CM/ECF p. 11.) Plaintiff alleges Auto Body Authority Towing caused personal property damage to her company vehicle when they failed to "deactivate the brake booster and thief system" upon towing the vehicle. (Filing No. 10 at CM/ECF p. 13.)

On November 14, 2024, pursuant to a plea deal, Plaintiff entered guilty pleas to amended charges of "improper lights of the plaintiff company storm chaser ambulance and attempted . . .

---

[2] The videos provided by Plaintiff do not provide a view of the physical interaction between Plaintiff and the officers before and during her removal from the vehicle. Rather, one video provides a view of the immediate aftermath of Plaintiff's removal from the vehicle where she is already lying on the ground and being handcuffed by the officers. (Attachment A1 to Filing No. 1.)

obstruction of public servant" in exchange for dismissal of the resisting arrest, obstruction of a public servant, impersonation of a public servant, and careless driving charges. (Filing No. 10 at p. 34.)

As a result of the April 30, 2024, incident, Plaintiff claims Officer Haggis and Officer Bafaro caused her bodily injury and used "such unnecessary extreme force" that Plaintiff had to have four surgeries and many doctor's visits to resolve her injuries including the rupture of her left breast implant, damage and rupture to her "C3C4 spine," and nerve rupture damage to her left and right wrists from the handcuffs. (Filing No. 10 at CM/ECF p. 21.) Plaintiff further alleges she lost her three jobs and her apartment twice due to her injuries and being unable to work. Plaintiff also claims she suffered emotional stress and psychological injury damages as well as personal property damage, mainly to her vehicle. As relief, Plaintiff seeks the arrest and jailing of Officer Haggis and Officer Bafaro; a public apology; reimbursement for personal property damages and refund of towing fees; damages for lost wages, lost housing, medical bills, emotional stress, and psychological injury; and arrest of the other driver involved in the April 30, 2024, incident.

### III. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and

citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## IV. DISCUSSION

### A. Pleading Rules

Although courts construe pro se pleadings liberally, pro se litigants, like all other parties, must abide by the Federal Rules of Civil Procedure. *See, e.g.*, *Williams v. Harmon*, 294 Fed. App'x 243, 245 (8th Cir. 2008) (affirming dismissal where pro se litigant failed to comply with the Federal Rules of Civil Procedure). Among other procedural requirements, parties must formulate their pleadings in an organized and comprehensible manner:

> Specifically, Federal Rule of Civil Procedure 8(a)(1)-(3) requires that a complaint contain a "short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement" of the plaintiff's claims and a "demand for the relief sought." Federal Rule of Civil Procedure 8(d)(1) provides that, although no technical form of pleading is required, each claim must be simple, concise and direct. Federal Rule of Civil Procedure 10(b) directs parties to separate their claims within their pleadings and provides that each claim should be limited as far as practicable to a single set of circumstances. In addition, Rule 10(b) makes clear that each claim that is founded on a separate transaction or occurrence must be stated in a separate count when doing so would promote clarity.

*McPeek v. Unknown Sioux City DEA Officers*, No. C17-4011-LTS, 2017 WL 1502809, at *3 (N.D. Iowa Apr. 25, 2017), *aff'd sub nom. McPeek v. Sioux City DEA Unknown Officers*, No. 17-2030, 2017 WL 5440036 (8th Cir. Sept. 29, 2017).

The primary purpose of Rule 8 is to allow the court and an opposing party to understand whether a valid claim is alleged and, if so, what it is; the complaint must be sufficiently clear so the court or an opposing party is not required to keep sifting through it in search of what it is plaintiff asserts. *Cody v. Loen*, 468 Fed. App'x 644, 645 (8th Cir. 2012) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994)). "A litigant cannot ignore her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks." *Murillo v. Kittelson*, No. 8:19CV571, 2020 WL 3250231, at *3 (D. Neb. June 16, 2020) (quoting *United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992)).

6

Here, Plaintiff's Amended Complaint does not contain a "short and plain statement" of her claims nor is it "simple, concise, and direct." Rather, Plaintiff's Amended Complaint largely consists of disjointed, confusing, and conclusory allegations that Defendants have violated various federal and/or state laws without providing sufficient factual allegations to demonstrate why that may be so. "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2); citation omitted)). Upon review, the Court concludes Plaintiff's Amended Complaint fails to meet the Rule 8 pleading standard, making her Complaint subject to dismissal for failure to state a claim upon which relief may be granted. On the Court's own motion, Plaintiff will be given leave to file a second amended complaint that sufficiently describes her claims against Defendants.

In addition, while the core of the Amended Complaint's allegations address Plaintiff's claims related to her April 30, 2024, arrest, Plaintiff appears to assert other claims against Defendants that are not properly joined in this action. Federal Rule of Civil Procedure 20 states that multiple defendants may be joined in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or *arising out of the same transaction, occurrence, or series of transactions or occurrences*." Fed. R. Civ. P. 20(a)(2)(A) (emphasis added). In addition, there must be a "question of law or fact common to all defendants" in the action. Fed. R. Civ. P. 20(a)(2)(B). Plaintiff's claims that (1) Auto Body Authority Towing violated ADA standards related to an August or September 2024 incident in which Plaintiff backed up into "stationary bollard yellow poles" in the defendant's parking lot, (Filing No. 10 at CM/ECF pp. 16–18), and (2) the State of Nebraska "refused to press charges on Ms. Kayla Adams of false reporting rape" and wrongfully convicted her in a November 2023 criminal case, (Filing No. 10 at CM/ECF pp. 10), appear to bear no relation to the April 30, 2024, incident involving Officer Haggis and Officer Bafaro. As the Court will give Plaintiff leave to amend her Amended Complaint, the Court admonishes Plaintiff that any amended pleading she files must comply with Federal Rule of Civil Procedure 20 and contain only claims that are properly joined against all the named defendants. The Court will drop or sever any improperly joined parties or claims included in an amended pleading. *See* Fed. R. Civ. P. 21. (court may "drop a party" or "sever any claim against a party" that is improperly joined "[o]n motion or on its own.").

7

Basic pleading defects aside, Plaintiff's Amended Complaint suffers from other deficiencies warranting dismissal or requiring amendment.

**B. State's Sovereign Immunity**

Plaintiff names the State of Nebraska as a defendant, though the exact nature of her claims against the State are difficult to discern. Plaintiff appears to assert the State has allowed hate crimes to be committed against Plaintiff; denied her equal protection of the laws as a transgender woman; directed a Department of Health and Human Services employee to obtain Plaintiff's contact information from Medicaid files without Plaintiff's consent in violation of "HIPAA laws";[3] and wrongfully convicted and imprisoned her on at least two prior occasions. (Filing No. 10 at CM/ECF pp. 8–11.) Plaintiff, however, cannot proceed against the State on any of these claims.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995), *abrogated on other grounds by S.A.A. v. Geisler*, 127 F.4th 1133 (8th Cir. 2025); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations.

Here, Plaintiff seeks monetary damages from the State and does not seek any prospective injunctive relief for ongoing federal law violations against any State officials in their official capacity. As such, Plaintiff's claims against the State are barred absent a waiver of immunity by the State or an override of immunity by Congress. There is no indication that the State of Nebraska waived or Congress overrode immunity here. Therefore, Plaintiff's claims against the State of Nebraska must be dismissed.

---

[3] The Court understands "HIPAA" to mean the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d to 1320d-9.

## C. Federal Law Claims[4]

### 1. HIPAA

Plaintiff asserts a claim based on violations of HIPAA, 42 U.S.C. §§ 1320d to 1320d-9. However, HIPAA does not create a private right of action. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *14 (D. Neb. Sept. 16, 2019); *Fast v. Fast*, No. 8:07CV310, 2007 WL 2417384, at *2 (D. Neb. Aug. 23, 2007); *see also Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action."). Rather, "HIPAA imposes requirements on the Department of Health and Human Services, health plans, and healthcare providers involved in the exchange of health information to protect the confidentiality of such information" and "provides for both civil and criminal penalties for individuals who improperly handle or disclose individually identifiable health information." *Fast*, 2007 WL 2417384, at *2 (citing *Johnson v. Quander*, 370 F.Supp.2d 79, 99 (D.D.C.2005)). As such, Plaintiff cannot state a claim for recovery under HIPAA and such claims must be dismissed.

### 2. Title VII

Plaintiff refers to Title VII of the Civil Rights Act of 1964 in her Amended Complaint. (Filing No. 10 at CM/ECF p. 21.) Because "Title VII addresses the conduct of employers only," *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006), Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, must be dismissed as she has not sued her "employer" within the meaning of Title VII.

### 3. ADA

Liberally construed, Plaintiff alleges that on April 30, 2024, Auto Body Authority Towing towed her vehicle and Officer Haggis and Officer Bafaro denied her an interpreter in violation of Title II of the ADA, as amended, 42 U.S.C. § 12131 *et seq*.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

---

[4] To the extent Plaintiff attempts to assert federal law claims other than the claims discussed below, the Court has been unable to discern such claims or has declined to discuss such claims that are improperly joined under Federal Rule of Civil Procedure 20.

U.S.C. § 12132. Plaintiff's ADA claims are properly asserted against Officer Haggis and Officer Bafaro in their official capacities, as such claims, in effect, are claims against the City of Bellevue, which clearly falls within the definition of a "public entity" under the ADA.[5] *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) ("A local police department falls 'squarely within the statutory definition of public entity' . . . ." (quoting *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998))). However, nothing in the Complaint suggests that Auto Body Authority Towing is a public entity within the meaning of Title II of the ADA, and the Court concludes Plaintiff's Amended Complaint fails to allege a plausible ADA claim against Auto Body Authority Towing based merely on the towing of Plaintiff's vehicle from a handicapped parking spot at the defendant officers' direction.

To state a claim under the ADA, a plaintiff must show "[she] is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of [her] disability." *Gorman*, 152 F.3d at 912. The term "qualified individual with a disability" in the ADA means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Taken as true, the Amended Complaint's allegations indicate that Plaintiff is a qualified individual with a disability as she is deaf or hard-of-hearing and uses hearing aids. However, Plaintiff does not allege facts suggesting that she was denied participation in, or the benefits of, the services, programs, or activities of the City of Bellevue or the BPD because of her disability, or was subjected to discrimination because of her disability. While Plaintiff alleges Officer Haggis and Officer Bafaro denied her request for an interpreter, she does not allege any facts to suggest

---

[5] The ADA defines "public entity" to include "any State or local government" and "any department, agency . . . or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1).

that she was unable to communicate with the officers or understand the events that followed her arrest. While deaf arrestees are "entitled to be placed on equal footing with other arrestees at the police station" and police are "required to take appropriate steps to ensure that [their] communication with [a deaf individual] was as effective as with other individuals arrested," *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1087 (11th Cir. 2007), nothing in the Amended Complaint or the videos submitted by Plaintiff suggest that she did not "receive effective communication that result[ed] in 'meaningful access' to a public entity's services" as required by the ADA, *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783–84 (8th Cir. 2012) (citing *Loye v. Cnty. of Dakota*, 625 F.3d 494, 496–97, 500 (8th Cir. 2010)). The Court will give Plaintiff leave to amend her Amended Complaint to allege sufficient facts to state plausible ADA claims.

### 4. 42 U.S.C. § 1983

Liberally construed, Plaintiff appears to be attempting to bring constitutional claims under 42 U.S.C. § 1983 against Auto Body Authority Towing, Officer Haggis, and Officer Bafaro. (*See* Filing No. 10 at CM/ECF p. 8, 14, 17, 20–21.) Section 1983 creates a cause of action for those who are deprived of a federally protected right by a person acting "under color of state law." *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016).

*a. Auto Body Authority Towing*

Here, Plaintiff sues Auto Body Authority Towing, a private company. To succeed on a § 1983 claim against Auto Body Authority Towing, Plaintiff must demonstrate that the company was acting under color of law. *Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). "An act violating the Constitution is considered to have occurred under color of law if it is fairly attributable to a governmental entity." *Meier*, 934 F.3d at 829 (internal quotation marks and citation omitted). "The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a [governmental] actor," including "where a private actor is a 'willful participant in joint activity with the [governmental entity] or its agents.'" *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151 (1970)). "The one unyielding requirement is that there be a 'close nexus' not merely between the [governmental entity] and the private party, but

11

between the [governmental entity] and the alleged deprivation itself." *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Plaintiff alleges Auto Body Authority Towing has a contract with the City of Bellevue and BPD and "officer police cars are parked there and stored there." (Filing No. 10 at CM/ECF p. 17.) While it is possible that Auto Body Authority Towing was a "state actor" when it towed Plaintiff's vehicle, *see Smith v. Insley's Inc.*, 499 F.3d 875 (8th Cir. 2007) (holding that a towing company acted under color of state law when it had a contract with the sheriff's office and towed a vehicle at the request of the sheriff's office as part of an official criminal investigation), the allegations of Plaintiff's Complaint fail to show a constitutional violation.

Liberally construed, Plaintiff's allegations that Auto Body Authority Towing towed her car from where it was legally parked in a handicap parking space at the direction of Officer Haggis and Officer Bafaro and damaged Plaintiff's car in the process of towing it raise a due process claim. The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Due process requires that Plaintiff "have had, at a meaningful time and in a meaningful manner, an opportunity to challenge the seizure of his property." *Allen v. City of Kinloch*, 763 F.2d 335, 336 (8th Cir. 1985) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Moreover, "[w]hen a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (internal quotation marks and citation omitted).

Here, Plaintiff does not allege that she was denied any due process related to the towing of her vehicle or even to what extent she was deprived of possession of her property beyond the initial towing. Plaintiff's due process claim for damages against Auto Body Authority Towing, as related to the allegedly illegal towing, also fails because she has not alleged that Auto Body Authority Towing acted pursuant to an unconstitutional policy or custom. *See Insley's*, 499 F.3d at 880 ("A corporation acting under color of state law will be held liable under section 1983 for unconstitutional policies, but will not be liable on a respondeat superior theory."). Moreover, to the extent Plaintiff asserts a due process claim against Auto Body Authority Towing based on the property damage caused to her vehicle due to their failure to "deactivate the brake booster and

thief system" upon towing the vehicle, (Filing No. 10 at CM/ECF p. 13), Plaintiff's allegations suggest mere negligence, and "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

### b. Officer Haggis and Officer Bafaro

Plaintiff alleges throughout her Amended Complaint that Officer Haggis and Officer Bafaro are sued in their official capacities. Plaintiff's official-capacity claims against the officers are actually claims against their employing municipality, the City of Bellevue. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . .").

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated [his] federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against the City of Bellevue, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff's Complaint fails to allege facts suggesting that any of Officer Haggis' or Officer Bafaro's actions were taken pursuant to a policy or custom of the City of Bellevue, nor does the Complaint allege facts suggesting a failure to train on the part of the City of Bellevue. "Although [Plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, [she] must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the [City] or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cnty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016). Accordingly, Plaintiff's Amended Complaint fails to state a claim against Officer Haggis and Officer Bafaro in their official capacities and such claims are subject to dismissal.

As indicated above, Plaintiff will be given leave to file a second amended complaint, and she may amend her § 1983 claims against Officer Haggis and Officer Bafaro to allege sufficient facts to state a plausible claim for relief against them in their official and/or individual capacities. If Plaintiff chooses to file a second amended complaint, she should keep the following discussion in mind regarding the claims she may be attempting to assert against Officer Haggis and Officer Bafaro.

### c. Fourth Amendment Claim Standards

Liberally construed, Plaintiff appears to be attempting to bring claims under § 1983 for false arrest, malicious prosecution, and excessive force in violation of the Fourth Amendment. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers,

14

and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A § 1983 claim based on the Fourth Amendment requires a plaintiff to demonstrate that a search or seizure occurred, and the search or seizure was unreasonable. Clark v. Clark, 926 F.3d 972, 977 (8th Cir. 2019).

With respect to a false arrest claim, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010) (internal quotation marks and citation omitted). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Id. (internal quotation marks and citation omitted). "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." Id. (internal quotation marks and citation omitted).

Malicious prosecution also is actionable under the Fourth Amendment. Thompson v. Clark, 596 U.S. 36, 42 (2022). To state a claim of malicious prosecution under the Fourth Amendment, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) (citing Thompson, 596 U.S. at 44). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." Thompson, 596 U.S. at 43. The Court notes Plaintiff's allegation that she accepted a plea agreement to two amended charges appears to negate the third element of a malicious prosecution claim as Plaintiff cannot "show that the criminal prosecution ended without a conviction." Id. at 49.

Finally, Plaintiff's excessive force claim "'is governed by the Fourth Amendment's prohibition against unreasonable seizures,'" Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012)), and "is evaluated under the reasonableness standard of the Fourth Amendment." Coker v. Arkansas State Police, 734 F.3d 838, 842 (8th Cir. 2013) (internal quotation and citation omitted). To show a Fourth Amendment violation by the use of force, a plaintiff must establish (1) that she was "seized"[6] within the

---

[6] To constitute a "seizure" under the Fourth Amendment, there must be a willful or intentional application of physical force, as determined by the "officer's objective behavior," or the plaintiff's submission to the police officer's show of authority. Atkinson v. City of Mountain View, 709 F.3d 1201, 1208 (8th Cir. 2013).

meaning of the Fourth Amendment and (2) that an officer's use of force was objectively unreasonable given the facts and circumstances of the incident as "judged from the perspective of a reasonable officer on the scene." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (internal quotation and citation omitted); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013).

"Objective unreasonableness is 'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight.'" *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court may also consider the result of the force. *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009). "Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Wilson*, 901 F.3d at 989 (citing *Smith*, 586 F.3d at 581).

### 5. Freedom of Information Act

Lastly, Plaintiff also appears to assert claims pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, complaining that Defendants have denied her numerous "verbal phone and email FOIA requests." (Filing No. 10 at CM/ECF p. 353.) FOIA, however, only applies to federal agencies and, thus, has no application to any of the named Defendants in this case. *See* 5 U.S.C. § 551(1) ("'[A]gency' means each authority of the Government of the United States . . . ."); *Mace v. U.S. E.E.O.C.*, 37 F. Supp. 2d 1144, 1150 n.6 (E.D. Mo.), *aff'd sub nom. Mace v. E.E.O.C.*, 197 F.3d 329 (8th Cir. 1999) ("The FOIA applies only to records held by a federal government agency.").

### D. Improper Relief Requested

As part of the relief requested, Plaintiff seeks the arrest and incarceration of Officer Haggis, Officer Bafaro, and the other driver in the April 30, 2024, incident. (Filing No. 10 at CM/ECF p. 369–70.) However, a private plaintiff cannot force a criminal prosecution because the authority to initiate criminal charges lies only with state and federal prosecutors. *See Nieves v. Bartlett*, 587 U.S. 391, 417 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("the decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials"); *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to

16

file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Cragoe v. Maxwell*, No. CIV 11-4188, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) ("If [the pro se plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings.") (collecting cases); *Blechinger v. Sioux Falls Hous. & Redevelopment Comm'n*, No. CIV. 12-4004, 2012 WL 174653, at *3 (D.S.D. Jan. 20, 2012) (neither pro se plaintiff nor the court can charge defendant with a crime because "[w]hether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's not the court's discretion") (internal quotation marks and citation omitted). Because the Court does not have the authority to initiate a criminal prosecution, Plaintiff's request to arrest and jail Officer Haggis, Officer Bafaro, and the other driver does not state a federal claim.

**E. State Law Claims**

Liberally construing the Amended Complaint, Plaintiff may also have claims for violations of state law such as damage to property, slander, defamation, and other tort claims. Pending amendment of the Amended Complaint as set forth in this Memorandum and Order, the Court makes no finding regarding its jurisdiction over any potential state law claims.

## V. OTHER PENDING MOTION

On September 27, 2024, Plaintiff filed a motion (the "Motion to Remove") seeking to remove Case Number CI24-1315 from the District Court of Sarpy County, Nebraska, (the "State Case") to this Court pursuant to 28 U.S.C. § 1446. (Filing No. 9.) Based on Plaintiff's filings in this Court and a search of her state court records, available to this Court on-line, Plaintiff filed the State Case on July 23, 2024, against all of the same defendants listed in her initial Complaint in this case.[7] (*See* Filing No. 1 at CM/ECF p. 9 (indicating Plaintiff filed her Complaint in "the Ponca Tribal courts, United States District Court for the District of Nebraska, [and] in the District Court of Sarpy County, Nebraska," "just in case of jurisdiction problems").)

Upon review, Plaintiff's Motion to Remove must be denied. First, Plaintiff cannot remove the State Case to this Court because she is the plaintiff in the State Case, and removal is allowed only to defendants. Federal law authorizes the removal of some state court civil actions but only

---

[7] This Court has been afforded access to the computerized record keeping system for the Nebraska state courts. The Court takes judicial notice of the state court records related to this case in *Yukie Soto-Elliott v. State of NE, et al*, Case No. CI24-1315, District Court of Sarpy County, Nebraska. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

by a state court defendant or defendants. 28 U.S.C. § 1441(a)(1) (providing for removal of state court civil actions over which federal district courts have original jurisdiction "by the defendant or the defendants"); 28 U.S.C. § 1443 (providing for removal of certain civil rights actions "by the defendant"). "There is no federal law authorizing plaintiff to remove [her] state court action to federal court." *Fonder v. S. Dakota*, No. 1:21-CV-01023-CBK, 2021 WL 4710781, at *3 (D.S.D. Oct. 8, 2021).

Additionally, Plaintiff's state court records show that she voluntarily dismissed the State Case on November 4, 2024, and the matter was dismissed without prejudice. Thus, her motion to remove the State Case is moot.

## VI. CONCLUSION

Plaintiff's Amended Complaint fails to state a plausible claim upon which relief may be granted and, thus, is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2). On the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file a second amended complaint that sufficiently describes her claims against Defendants Auto Body Authority Towing, Officer Haggis, and Officer Bafaro. However, Plaintiff is not given leave to amend her claims against the State of Nebraska as her claims are barred by sovereign immunity and the State will be dismissed as a defendant to this action.

In amending her Amended Complaint, Plaintiff should be mindful to clearly explain in a **<u>concise and organized</u>** fashion what Defendants did to her, when Defendants did it, how Defendants' actions harmed her, and what specific legal rights Plaintiff believes Defendants violated. Plaintiff's second amended complaint must comply with the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 8(a) and (d), which require that each "allegation . . . be simple, concise, and direct" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff also should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Plaintiff is encouraged to use the court-approved form to draft her second amended complaint, which the Clerk of the Court will provide to her, and she should carefully read and follow the instructions in the form.

Plaintiff must **<u>concisely</u>** summarize the relevant allegations of her Amended Complaint and any new allegations **<u>in one document</u>**. Plaintiff is warned that a second amended complaint will supersede, not supplement, her Amended Complaint. If Plaintiff fails to file an amended complaint

in accordance with this Memorandum and Order, her claims against Defendants will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after she addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Second Motion to Amend, (Filing No. 10), is granted. The Clerk of Court is directed to update the docket text to reflect that Filing No. 10 is the Amended Complaint.

2. The Clerk of Court is further directed to remove the following defendants as parties to this case in accordance with the Amended Complaint, (Filing No. 10): "County Attoreny [sic] Office," "City of Bellevue," "Bellevue police department," "Papillion Police Department," "Sarpy County Jail," "Aimee C. Bataillon," "Howard Banks," "McDaniel," and "Honda Cars of Bellevue Dealership."

3. Plaintiff's claims against the State of Nebraska are dismissed without leave to amend, and the Clerk of Court is directed to remove "State of Nebraska" as a defendant to this case.

4. Plaintiff shall have until **September 2, 2025**, to file a second amended complaint against Defendants Auto Body Authority Towing, Officer Haggis, and Officer Bafaro in accordance with this Memorandum and Order. Failure to file a second amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

5. If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims she wishes to pursue against the remaining defendants she wishes to proceed against in the second amended complaint. Plaintiff should be mindful to explain **concisely** in her amended complaint what each defendant did to her, when each defendant did it, how each defendant's actions harmed her, and what specific legal rights Plaintiff believes each defendant violated. Plaintiff is encouraged to use the court-approved form to draft her second amended complaint, and she should carefully read and follow the instructions in the form.

6. Failure to consolidate all claims into **one document** may result in the abandonment of claims. **Plaintiff is warned that a second amended complaint will supersede, not supplement, her Amended Complaint.**

7. Plaintiff shall not file additional motions to amend or supplements without strictly complying with Nebraska Civil Rule 15.1.[8]

8. Plaintiff's second amended complaint shall not contain lengthy regurgitation or descriptions of statutory, case, or other legal text, as appears in Filing No. 10. Plaintiff is further instructed to not file copies of letters, medical records, photographs, invoices, emails, items from the Internet, and the like, as such paperwork can be filed, if relevant, in the course of motion practice later in the litigation.

9. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event she files a second amended complaint.

10. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **September 2, 2025**: amended complaint due.

11. Plaintiff's First Motion to Amend, (Filing No. 8), is denied as moot.

12. Plaintiff's Motion to Remove, (Filing No. 9), is denied.

Dated this 31st day of July, 2025.

BY THE COURT:

s/ Susan M. Bazis
United States District Judge

---

[8] Nebraska Civil Rule 15.1(a) provides:

> A party who moves for leave to amend a pleading (including a request to add parties) must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments. Except as stated in these rules or court order, the proposed amended pleading must be a complete pleading that, if allowed to be filed, supersedes the original pleading in all respects; no part of the prior pleading may be incorporated into the proposed amended pleading by reference. The motion for leave to amend must (1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties.

Nebraska Civil Rule 15.1(c) states: "The granting of the motion for leave to amend does not constitute filing the amended pleading. If granted leave to amend, the party must then file the amended pleading."